The plaintiff claimed title to the negro in question under the following clause of the will of John White, deceased:
(537) "I lend unto my beloved wife, Mary, all my property, real and personal, to have, hold, and use for the purpose of her sustenance during her natural life or widowhood."
"I will that after the death of my beloved wife, my son William shall have one negro woman named Lucy, but that her first born child after this date shall be given to my son Howel. The second to my grandson, Butler Stonestreet White."
It was admitted that the slave in question was the second child of the woman Lucy, mentioned in the will of John White; that she was in the defendant's possession and had been so from the time of her birth; and further, that this action had been brought within three years after the death of the testator's widow. The defendant claimed under one Robert Simonton, and it appeared in evidence that the widow of John White, the testator, and William White, one of his sons, in the spring of the year 1819, sold and delivered the negro woman Lucy to Simonton, in discharge of a debt due from the testator to the said Simonton; and that the latter, in a few days afterwards, sold her to the defendant; and that Charlotte was born after Lucy came into the defendant's possession. The defendant also proved, by one Nicholas Norton, that he, the witness, was named executor in the will of the said John White; that he was also a witness to the will, and proved its execution in the County Court of Iredell, when it was admitted to probate, but that he never qualified or in any way acted as executor. He stated further that when Simonton bought Lucy from the widow and son of the testator, he, Norton, at the request of Simonton, took her to his own house and in a few days afterwards delivered her to the defendant, by the direction of Simonton. Upon these facts his Honor being of opinion that the plaintiff's claim *Page 423 
was barred by the statute of limitations, and further, that there was no evidence of Norton's having acted as executor of John White, deceased, the plaintiff submitted to a nonsuit and appealed.
Before the plaintiff could entitle himself to a verdict (538) it was necessary to show an assent on the part of the executor to the legacy in his favor. Acquiescence by an executor in the possession or sale by the legatee for life of the thing bequeathed, would furnish a ground for inferring an assent to the ulterior bequest. But such an inference could not be here raised until it appeared that there was in fact an executor to assent. No man can be compelled to accept the office of executor, and without some act manifesting acceptance of the office it cannot be presumed. The ordinary mode in which this acceptance is declared is by proving the will as executor. In this case the office was not thus accepted. The individual named as executor in the will was also a witness to its execution, and on its production in court, he testified to its execution as a witness, but did not qualify to it as executor. It became, therefore, necessary for the plaintiff to show some act of administration characteristic of the office of executor, done by the person thus nominated, which was equivalent to an acceptance of the office. He offered no testimony of any kind tending to show such an act. But, it is insisted on his behalf that this defect in his testimony was supplied by the testimony on the part of the defendant. The latter examined the supposed executor, who testified that he had neither qualified nor acted as executor, and stated, also, that when the sale was made of the negro woman Lucy, by the widow of the testator, to Robert Simonton, from whom she was shortly afterwards purchased by the defendant, he, at Simonton's request, took the negro woman to his house, and afterwards, by Simonton's direction, delivered her to the defendant. Now, it is not pretended that this testimony, if true, proves or tends to prove that the witness acted as executor, but it is argued that it should have been left to the jury, because they might have believed that the acts were done, but not done in the character of agent of Simonton, and thence have inferred an intermeddling with the estate as executor. To this argument we think it is properly objected that the opinion intimated by the judge, that this testimony was not evidence of acceptance of the office, is necessarily predicated upon the supposition of its truth — and if the plaintiff denied the representation of facts as made by the witness he ought, in fairness, to have insisted that the truth of (539) this representation should have been submitted to the jury. But there is another answer to the argument, which we think satisfactory. *Page 424 
Certainly jurors are not bound to take either the whole or any part of a witness's testimony as true, if, in their consciences they do not so believe. But when it is incumbent on a party to establish a fact, and theonly testimony in relation thereto contradicts it, a jury cannot capriciously mangle the testimony so as to convert it into evidence of what it does not prove. If the witness be deserving of credit the fact necessary to be shown is disproved — and if he be not worthy of credit there is a defect of proof.
It is not necessary to express an opinion upon the other point. If it were, we should probably hold that according to the true construction of the will the legacy to the plaintiff was not to take effect in possession until after the death of the widow; that if he had a right of action it did not arise until her death, and that therefore this suit was not barred by the statute of limitations. The judgment is affirmed with costs.
PER CURIAM. Judgment affirmed.
Cited: Edney v. Bryson, 47 N.C. 366.