## SHIMI MIHO v. UNITED STATES.*
### No. 6648.

Circuit Court of Appeals, Ninth Circuit.
April 4, 1932.

Russell W. Cantrell and Guy C. Calden, both of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Lucas E. Kilkenny, Asst. U. S. Atty., both of San Francisco, Cal.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

Hikoroku Ogo and Shimi Miho were jointly indicted for conspiracy to violate the immigration laws of the United States. Both were convicted, and Shimi Miho alone appeals.

It appears from the evidence that Hikoroku Ogo, a Japanese alien, a citizen and subject of the empire of Japan, entered this country unlawfully on February 24, 1920, at San Francisco, having arrived on

*Rehearing denied June 24, 1932.

the ship Eastern Belle, as a member of her crew. He desired to visit Japan and to return to the United States. He had no passport and visited Shimi Miho at his hotel in San Francisco to secure his assistance in procuring a re-entrance permit for which he agreed to pay Miho $200, $100 being paid forthwith on October 23, 1930, the balance to be paid at the time of the issuance of the re-entry permit. A blank application for such permit was procured, filled out by Miho, and sworn to by Ogo before a notary public. This application falsely stated that the applicant had arrived at San Francisco on June 5, 1906, on the steamship Alameda, and that he was admitted into the United States under the name of Yasukichi Yokota. It appears from the evidence that the name of Yasukichi Yokoda was enrolled as a passenger on the steamship Alameda arriving at San Francisco June 5, 1906. Later, a notice was received by Ogo, apparently from the immigration authorities, with relation to the application. He visited Miho and was hold by him that the letter was "not any good" and to disregard it and to come in in about two months when they would make a new application. The new application was dated February 4, 1931, in which it was stated that the applicant arrived in San Francisco on the 20th day of August, 1906, on the steamship Alameda, and that the name he used at that time was Yasohachi Ito.

The purpose of giving the false date of entry as 1906 was to fix a time before passports were required, thus accounting for the absence of a passport. The purpose of giving the name of Yasukichi Yokota in the first instance, and of Yasohachi Ito in the second instance, was to use a name which would appear upon the passenger list of the steamship Alameda. Ogo had in fact never been known by either of the names which he asserted in his application were the names under which he had entered the United States. Section 220 (b), 8 USCA, prohibits one applying for a permit under the immigration law to falsely impersonate another. That subdivision is as follows: "(b) False personation of another; using assumed or fictitious name; unlawful sale, etc., of visa or permit; penalty. Any individual who (1) when applying for an immigration visa or permit, or for admission to the United States, personates another, or falsely appears in the name of a deceased individual, or evades or attempts to evade the immigration laws by appearing under an assumed or fictitious name, or (2) sells or otherwise disposes of, or offers to sell or otherwise dispose of, or utters, an immigration visa or permit, to any person not authorized by law to receive such document, shall, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both." Immigration Act 1924, § 22 (b), 8 USCA § 220 (b). The charge is that the defendants conspired together to violate this provision of the statute.

The appellant's first contention is that no offense is charged in the indictment, and no conspiracy to violate the law is shown for the reason that there was no impersonation of another, nor appearance under an assumed or fictitious name. The argument is that, as Ogo signed the application in his own name, he cannot be said to have impersonated another. We think in this connection, however, the appellant takes entirely too narrow a view of the statute. If he had signed the name Yokota or the name Ito, it is clear, even under the appellant's contention, that there would be a false impersonation of another. What he did do, while not literally the same, was the same in substance and effect. He said in effect, "My name was Ito, but I have changed it to Ogo. I am the one who entered the United States at San Francisco on August 20, 1906."

The complaint stated facts sufficient to constitute an offense, and the evidence, so far as this point is concerned, established the offense.

It is claimed, also, that, although the application for the permit was required by the Immigration Act of 1924, § 10 (a), 8 USCA § 210 (a), and by the rules and regulations established by the Secretary of Labor under that statute (rule 25, par. 1, subd. (b), that the false information contained in the application made and executed by the defendants was not required by such statute or rules. That question is not of importance in this case, in view of the fact that the charge here is a conspiracy to violate the immigration laws by the impersonation of another in the application for a re-entry permit. It is thus immaterial how the representation was made or how it was intended to be made. It should, however, be stated that the regulation in question particularly requires that the applicant shall state under oath "the time and manner of his last arrival in the United States and the port where legally and permanently admitted." This, in effect, required the petitioner to show that he had legally entered the United States and had not done so surreptitiously; and, conse-

quently, involved a showing as to the ship upon which he arrived, and this necessarily involved the statement of his name when he arrived. If he had changed his name, as the applicant alleged in his application, it is necessarily required that he should indicate that fact in order to connect up with the passenger list of the steamship upon which he claimed to have arrived.

The next proposition advanced by the appellant is one of considerably more difficulty. The point is that, although the defendants co-operated together in the preparation of the application for permit, which application contained the false statements and impersonation above mentioned, there was no agreement so to do. This contention is predicated upon the statements of Ogo, who was called by the government as a witness in its case in chief. Ogo testified in effect that he did not state to appellant Miho that he had landed in San Francisco in 1906 on the steamship Alameda, as alleged in the first application, or in August, 1906, as alleged in the second application; that he did not give to Miho the name Yasukichi Yokota, nor the name Yasohachi Ito, as names under which he had entered, but told Miho the truth, namely, that he had entered in 1920 at the time and under the circumstances above stated; that he could not read or write the English language, other than his own name, and that he did not fill out, or read, the application blanks; that he verified them without knowing their contents. It must be conceded, in the absence of this affirmative testimony by Ogo with relation to his ignorance of the nature and effect of the acts which he was committing, that the evidence would be amply sufficient to sustain the conviction of both upon the charge of the conspiracy. The question is whether these exculpatory statements of Ogo are sufficient to overcome the effect of the other testimony, including his own, which led to a conclusion of guilt. Appellant cites authorities to the effect that the denial by a witness of the existence of certain facts is not evidence of the existence of those facts, and, therefore, that a verdict cannot be predicated upon such testimony. For illustration he cites the statement in 23 C. J., p. 51, as follows: "Nevertheless a party upon whom it is incumbent to prove an alleged fact cannot call his adversary as a witness as to that fact, elicit testimony from him to the effect that such alleged fact has no existence, and then call upon the jury to discredit the evidence of such adversary merely because he is interested as a party, and to base upon the assumed falsity of his evidence an affirmative finding of the existence of such alleged fact, without any other evidence of its existence, or from which may be inferred." He also cites, Manchester Bank v. Harrington (Mo. Sup.) 199 S. W. 242; Moulton v. Moulton, 178 Minn. 568, 227 N. W. 896; White v. White, 20 N. C. 536.

These cases, we think, have no application to the situation presented in the case at bar. Here, there is no dispute that the defendants agreed together to attempt to procure from the immigration authorities a permit for re-entry. They are presumed to know that under the law they were not entitled to a permit for re-entry for the reason that the original entry was illegal and the statute only authorizes a re-entry permit where there has been a legal entry (Immigration Act 1924, § 10 (b), 8 USCA § 210 (b). Both Miho and Ogo knew there was no legal entry. They both knew that some sort of fraud or bribery was necessary in order to procure a permit. They both co-operated in such fraud by falsely impersonating another. Viewing the testimony of Ogo in its light most favorable to the appellant, it amounted to no more than a statement that he did not furnish to Miho the information which Miho incorporated in the application, and that by reason of his inability to read he did not know that the information was contained therein, and this is obviously the weakest and most unsatisfactory sort of evidence. The jury might very well have disbelieved this profession of ignorance as unduly exculpatory, and yet have believed that Ogo told the truth when he testified against his own interests that he landed in San Francisco in 1920 and not in 1906, that he had no passport, and have concluded that he entered into the agreement with the appellant to do what they did in fact do together. That the jury took this view is clear from the fact that they convicted both defendants, although with a recommendation for mercy in the case of Ogo. They evidently believed that Miho was making a business of obtaining fraudulent re-entry permits, that Ogo went to him with that knowledge, for he had testified that he had heard that Miho was "kind" in such matters, that Ogo paid him such a large sum of money to secure his services because he believed a permit could be obtained only by some unlawful method or means, and that his moral turpitude was relatively less than that of the man who made a business of imposing upon the government.

Judgment affirmed.